## McQUAID *vs.* POWERS AND O'DONNELL.

[ACTION TO RECOVER DAMAGES FOR NON-PERFORMANCE OF CONTRACT TO CONSTRUCT A HOUSE.]

*Contract; what will support joint action; what attestation sufficient where obligor makes his mark.*—A written contract for the construction of a house for a specified sum of money, signed by the parties, with an obligation beneath as surety for the faithful performance of the contract by the builder, signed, "Phillip ⋈ O'Donnell," and attested by mark.

two witnesses, whose names are written on the same page, but midway between those of the principals and the surety, was offered in evidence to support a suit for damages for non-performance of the contract prosecuted against the builder and surety jointly : *Held*, 1st. It was an attested instrument, the execution of which could be proved by one of the subscribing witnesses. 2d. The signature of the surety was shown to be complete by the testimony of the witness that the writing was executed by all the parties at the same time and place, and that he and the other witness signed it as witnesses with the assent of all the parties, and in their presence. 3d. As an obligation to answer for the default of another, a sufficient consideration was expressed. 4th. A joint suit against the defendants might be maintained upon it.

APPEAL from Circuit Court of Mobile.
Tried before Hon. JOHN ELLIOTT.

THIS was an action commenced by the appellant against the appellees jointly to recover damages for the non-performance of the contract evidenced by the following instrument :

"MOBILE, July 2d, 1866.

" Contract between John McQuaid, of the first part, and Robert Powers, of the second part.—It is hereby agreed that Robert Powers is to build for and deliver to John McQuaid, on or before 5th August next, a cottage residence, [here follows plan, dimensions, &c., of cottage.] The entire house to be built in good faith, according to plan and drawing furnished, for the sum of eight hundred dollars in current funds of the United States.

" In witness whereof we append our names.

$\left\{\begin{array}{l} \text{U. S. I.} \\ \text{R. STAMP.} \end{array}\right\}$ *Of the first part,* JOHN McQUAID. [L.S.]
                *Of the second part,* ROBT. POWERS. [L.S.]

Witnesses, $\left\{\begin{array}{l} \text{James Kelly,} \\ \text{W. L. Pinnix.} \end{array}\right.$

Securities. $\left\{\begin{array}{l} \text{We, the undersigned, do bind ourselves} \\ \text{hereby for the faithful performance of this} \\ \text{contract by Mr. Robert Powers, as securi-} \\ \text{ties.} \end{array}\right.$

his
PHILLIP ⋈ O'DONNELL."
mark.

The defendant O'Donnell pleaded, " 1st. The statute of frauds ; 2d. The general issue ; 3d. That he did not enter

into the contract and engagement set out in the complaint; and 4th. That said contract and engagement as to him is without consideration." And upon these pleas issue was joined. O'Donnell filed his sworn plea of *non est factum*, but this plea was withdrawn by him. Powers appeared, but filed no plea.

On the trial, the plaintiff offered in evidence the agreement, which is set out above, which was objected to by O'Donnell on the ground that the undertaking of Powers was absolute, but O'Donnell's was collateral and as a surety, and that they could not be joined in this action on that instrument.

This objection the court overruled.

The defendant O'Donnell then moved to exclude the agreement, on the ground that as to him it was not subscribed and executed, and attested by a subscribing witness, according to the statute, where a party signs by making his mark.

"Pending this objection, plaintiff introduced James Kelly, one of the witnesses named in the agreement, who testified that he saw O'Donnell affix his mark to the paper; that his name was written there by his daughter at his request; that it was acknowledged by him as his signature, as the surety for Powers in the contract, and also by Powers and McQuaid; that he subscribed it as a witness by their assent at the place where his name appears upon it, and that the other witness subscribed at the same time and place and in presence of all the parties; that O'Donnell received from McQuaid eight hundred dollars, and handed it to his daughter to keep for him; that the paper was then handed to McQuaid and a copy to Powers, with the plan of the house; that this occurred at O'Donnell's house in Mobile, where Powers boarded."

The court ruled that the signature of O'Donnell was not attested according to law, and that the evidence could not avoid the objection, and excluded the paper from the jury as to O'Donnell; to which ruling plaintiff excepted and took a non-suit, &c.

The various rulings of the court to which McQuaid excepted are now assigned as error.

GEORGE N. STEWART, for appellant.—The obligation was a sealed instrument.—Rev. Code, § 1585. But whether it was or not, was entirely immaterial, as the statute puts all written obligations which are made the foundation of the action on the same footing as sealed instruments, whether they be sealed or not. Section 2681 of the Revised Code provides that they shall be evidence of the duty for which they were given, and shall be taken as made on sufficient consideration, but may be impeached by plea and proof by the defendant.

The execution of such obligation is made by statute evidence without proof of execution, unless denied by plea on oath.—Rev. Code, §§ 2682, 2640.

In this case the execution had been denied by O'Donnell by plea, but that plea had been withdrawn.

It was excluded as to both defendants. One of them had made no objection to it.

But it was said that the attestation was not signed by the witness at the proper place as required by the statute. There is no statute on the subject; the one above cited applies to conveyances of lands.

Signing anywhere on the paper is sufficient.—Story on Contracts, § 863; Burge on Suretyship, p. 32. Even signing on the back is sufficient.—9 Mass. R. 314; 13 Johnson's R. 175.

The execution of the instrument as above stated stood before the court admitted, according to the statute, as it was made the foundation of the suit and was not denied on oath.

The written obligation was excluded also on the ground that there was a misjoinder—that the obligation of Powers was an original undertaking, and that the obligation of O'Donnell was a collateral undertaking.

In this we say the court again erred.

The obligation of O'Donnell was not collateral; it was

on his part, as well as on that of Powers, an absolute and original contract, not within the statute of frauds.

Both the writings constitute but one joint and several obligation in law.

The obligation of Powers was, that he should deliver the house on a certain day.

The obligation of O'Donnell was, that the house should be delivered by Powers on that day.

The two writings were simultaneously made, both delivered together by the two obligors to McQuaid.

The consideration was the same to both—eight hundred dollars paid. Powers accepted the consideration, and O'Donnell received the money. The obligation of both was that Powers should do the work and O'Donnell receive the pay. This was assented to by both.

Such contracts are treated precisely as if there was but one obligation signed by both jointly, and may be declared on as a joint and several promise.

That one signs as principal and the other as surety, makes no difference; they are nevertheless joint obligors. *White v. Howland,* 9 Mass. 314; *Nelson v. Dubois,* 13 Johns. 175; *Hunt v. Barnes,* 5 Mass. 358; Burge on Suretyship, 36.

The obligation of O'Donnell is not a collateral promise, because he has the fund for payment of the default which belonged to Powers.

A promise to pay out of funds of the principal debtor by the surety is not a collateral, but an original obligation, Burge on Suretyship, 28.

The evidence of the payment of the money to O'Donnell was proper, although by parol.

Extrinsic evidence may be given to ascertain the true import of a guaranty.—Story on Contracts, 410; 11 Johnson's R. 248.

The objection of misjoinder, under the authority of the cases above cited, does not exist. The pleadings in those cases show the light in which such contracts are treated; that is, the same as if only one joint obligation existed.

But the objection was not a proper one under the state of the pleadings. There was no plea in abatement for

misjoinder, nor was there any demurrer to the complaint.

The objection, even if available at first, was made at too late a stage of the case. A plaintiff should not be delayed by the withholding of such an objection.

ANDERSON & BOND, *contra*.—There was no error in the exclusion of the evidence offered as to O'Donnell—1st, Because it was a departure from the complaint, and did not correspond with its allegations; 2d. Because it was void as to O'Donnell under the statute of frauds, not expressing any consideration; and 3d. Because it was not signed or subscribed by O'Donnell as required by law.

1. The complaint declared on a joint undertaking. The contract attempted to be given in evidence is a full and distinct agreement, complete in itself with respect to plaintiff and Powers, but the undertaking of O'Donnell is collateral to the agreement in chief, and is not a part of it. Powers' agreement is complete without it. O'Donnell is a guarantor that Powers will perform his contract, and is not otherwise connected with it.—Chit. Plead. vol. 1, p. 44.

Story on Contracts, § 33*f*, p. 53, says: "In contracts of guaranty or suretyship, co-sureties may be either jointly or severally liable, according to the terms of their contract, but the surety is not jointly liable with the principal, his undertaking being collateral and secondary."

The case of *Phalen v. Dingee*, 4th ed. Smith N. Y. Rep. 379, is directly in point. See, also, *Le Roy v. Shaw*, 2 Duer, 626 ; *DeRidder v. Schermerhorn*, 10 Barb. 638 ; *Hall v. Farmer*, 2 Comst. 553 ; *Hicks v. Branton*, 21 Ark. 186 ; *Rowan v. Rowan*, 29 Penn. St. R. 181 ; *Worster v. Northrup*, 5 Wis. 245.

2. No consideration is expressed in the guaranty. The statute (Rev. Code, § 1862,) requires the agreement to express the consideration,

Burge on Suretyship, p. 30, says : "The statute requires the *agreement* to be in writing, and not merely the promise. If it was only necessary to show what one was to do, it would be sufficient to show the promise made by the defendant who was to be charged with it. But if this con-

struction were to be adopted, it would let in those very frauds and perjuries which it was the object of the statute to prevent."

It is true, other writings may be resorted to, but they must be other writings of the party to be charged, or to which he refers, or adopts.— *Wain v. Walters*, Smith's Leading Cases.

And this can not be done by parol, for parol evidence to connect them is not admissible.

3. The statute (Rev. Code, § 1,) is as follows : " ' Signature ' or ' subscription ' includes mark when the person can not write, his name being written near it, and witnessed by a perssn who writes his own name as a witness."

It is attempted to make one attestation cover both instruments. This might possibly be done, if the attestation followed the whole, but it is appended to the original, and can not be extended to the one following.

The instrument must appear on its face to be signed according to law. If the door be opened to parol proof, the very mischief is let in which the statute of frauds seeks to prevent.

The statute of frauds (Rev. Code, § 1862,) is *emphatic* that the writing must be subscribed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized in writing.

This case differs from the ordinary proof of the execution of a writing. In such case we have the signature, and only its genuineness is to be established. In this case the signature is not found ; and the effect of the proof would be to make a contract by parol evidence to bind a surety, which the statute of frauds forbids.

There is no signature to bind O'Donnell, if he were the principal, instead of a surety. Being a surety, the statute is very emphatic that the surety to be charged must have subscribed the agreement. Section 1 of the Revised Code requires the mark and the name of the party near it, and to be attested by a witness who writes his own name. Rules like this on the subject of the execution of deeds and wills are always strictly enforced.—See 5 Barr (Penn.)

p. 33, *Asay v. Hoover* ; see, also, *Graybill v. Barr*, 5 Barr, 441. *Flowers v. Bitting*, in MS., is directly in point.

4. The distinction between a direct and a collateral undertaking is shown by Mr. Serjeant Williams in his elaborate note to *Forth v. Stanton*, 1 Williams & Saund. 211. "The rule there laid down by him, and which has ever since been approved of, is, that the only test and criterion by which to determine whether the promise needs to be in writing, is the question whether it is or is not a promise to answer for a debt, default or miscarriage of another, for which that other continues liable."—Smith on Con., top page 116, citing many cases in notes on that and page 117.

In this case, the contract between the two principal parties is distinct and separate, and is complete by itself; while the contract of O'Donnell is incidental, separate and conditional. He guarantees or binds himself not to do anything himself, but to answer that Powers shall faithfully perform his (Powers') contract. O'Donnell does not agree to do any of the work; does not agree to join Powers in doing it. The contract is to build a house; that is entrusted to Powers, and Powers is entrusted and charged with that duty. He is fully liable upon it. Must not O'Donnell's liability, therefore, be necessarily secondary and collateral?—See *Deslhonde v. Boykin & McRae*, 37 Ala. 583.

B. F. SAFFOLD, J.—The appellee, O'Donnell, is not liable in this suit, unless the plaintiff can show that there is some agreement in writing expressing the consideration subscribed by him, or some other person by him authorized in writing. His alleged undertaking is to answer for the default or miscarriage of another.

The writing offered in evidence has the name of O'Donnell affixed, by his mark, as a guarantor of Powers' performance of his contract. The signatures of the two witnesses, from their position on the paper, and the purpose, as expressed by the word "witnesses" merely written near them, appear to be an attestation only of the contract between McQuaid and Powers. One of these witnesses,

Kelly, testified that his attestation was intended to apply to the signature of O'Donnell as well as to the others; that the whole execution of the instrument was made at one time, in the presence of all the parties and the witnesses.

As the obligation of Powers was founded upon a valuable consideration, and the guaranty was given at the time when it was incurred, and entered into the inducement to the contract on the part of the plaintiff, the whole being evidenced by one writing, a sufficient consideration for the guaranty is expressed.  It is not necessary that any consideration should pass directly from the party receiving the guaranty to the party giving it.  If the party for whom the guaranty is given receive a benefit, or the party to whom it is given receive an injury in consequence of the guaranty, and as its inducement, this is a sufficient consideration.— 1 Parsons on Contracts, 497; *Leonard v. Vredenburgh*, 8 Johns. 29; *Bickford v. Gibbs*, 8 Cush. 156.

As to the authentication of the guaranty, no law prescribes the place on a written instrument where the signature of an attesting witness must be written, nor is any particular form of attestation required.  The paper must indeed show that it is attested, and by whom.  When this is made to appear, the instrument is to be authenticated by the testimony of such attesting witness.  In case of a conveyance of land, the statute prescribes the facts which he must establish.  So far as the validity of the deed is concerned, this probate may be made at any time.  The testimony of Kelly is surely admissible to prove the execution of the contract by Powers.  From it we learn that O'Donnell also executed the writing as a guarantor of Powers' performance.  Shall his evidence be excluded against O'Donnell, because his name is not written in the customary place?  If so, then the place where a contract or conveyance should be attested is more controlling than the attestation itself.  We think the signature of O'Donnell is proven.

If O'Donnell, being sued on his obligation, might have obtained a summary judgment against Powers under sec-

tions 3070 and 3071 of the Revised Code, as he undoubt-edly could have done as surety in any manner on the con-tract or instrument, there can be no error in joining the two as defendants in the first instance.   Neither was liable, unless both were, for default in the performance of the contract.

The judgment is reversed, and the caused remanded.